1

2

3

4                      UNITED STATES DISTRICT COURT

5                           DISTRICT OF NEVADA

6                                        * * *

7   KENNETH HARADA; PAUL SASAKI;          )
    and KEN KAMINAKA,                      )
8                                          )
                    Plaintiffs,            )
9                                          )
    v.                                     )
10                                         )
    DANIEL DOIRON; LARRY RIEHLE;           )      2:04-CV-1320-PMP-RJJ
11  JACQUELINE MCQUIGG; and SALAS &        )
    MCQUIGG,                               )      O R D E R
12                                         )
                    Defendants.            )
13  _____)
                                           )
14  DANIEL DOIRON, an individual,          )
                                           )
15                  Counterclaimant,       )
                                           )
16  v.                                     )
                                           )
17  KENNETH HARADA; PAUL SASAKI;           )
    and KEN KAMINAKA;                      )
18                                         )
                    Counterdefendants.     )
19  _____)
                                           )
20  DANIEL DOIRON, an individual,          )
                                           )
21                  Third Party Plaintiff, )
                                           )
22  v.                                     )
                                           )
23  KATHRYN SILINGO, an individual;        )
    JOHN GIANNOS, an individual; and       )
24  FRANK TODDRE, an individual,           )
                                           )
25                  Third Party Defendants.)
    _____)
26

1    Presently before this Court is Third Party Defendant Katherine Silingo's

2 ("Silingo") Motion for Summary Judgment (Doc. #120), filed on October 2, 2006.  Silingo

3 filed a Supplement to Motion for Summary Judgment (Doc. #132) on December 11, 2006.

4 Third Party Plaintiff Daniel Doiron ("Doiron") filed a Response (Doc. #144) on January 22,

5 2007.  Silingo filed a Reply (Doc. #145) on January 26, 2007.

6    Also before the Court is Doiron's Emergency Motion to Present New Evidence to

7 the Court (Doc. #124), filed on October 17, 2006.  Silingo filed an Opposition (Doc. #143)

8 on January 22, 2007.  Doiron did not file a reply.

9 **I. BACKGROUND**[1]

10    In late 2002, Defendant Daniel Doiron met with Third Party Defendants

11 Katherine Silingo and John Giannos ("Giannos") about an investment opportunity involving

12 the purchase of a commercial property in Las Vegas, Nevada known as Vacation Village.

13 (Defs. Jacqueline McQuigg's and Salas & McQuigg's Opp'n to Pl.'s Mot. Summ. J. and

14 Counter-Mot. Summ. J., Aff. of Daniel Doiron ("Doiron Aff.") at ¶ 2.)  Doiron and Silingo

15 formed Del Caribe, L.L.C. ("Del Caribe"), a limited liability company, to purchase

16 Vacation Village.  (Id. at ¶¶ 3-5; Mot. for Summ. J. Against Defs. Daniel Doiron and Larry

17 Riehle [Doc. #60], Aff. of Katherine M. Silingo ("Silingo Aff.") at ¶¶ 2-3.)  Del Caribe

18 began negotiations with Vacation Village to purchase the property.  (Doiron Aff. at ¶ 6.)

19 During this time, Doiron retained Defendant Jacqueline McQuigg of the Defendant law

20 firm Salas & McQuigg to represent Del Caribe for the transaction.  (Id. at ¶ 7; Defs.

21 Jacqueline McQuigg's and Salas & McQuigg's Opp'n to Pl.'s Mot. Summ. J. and Counter-

22 Mot. Summ. J., Aff. of Jacqueline McQuigg ("McQuigg Aff.") at ¶ 2.)

23 ///

24

25

26    [1]  The Court takes this statement of facts in large part from a previous order entered in this case with some alterations.  (Order [Doc. #92].)

1         The purchase-sale agreement required Del Caribe to pay Vacation Village

2    $150,000 in earnest money that became non-refundable upon receipt by Vacation Village.

3    (Doiron Aff. at ¶ 8; Defs. Jacqueline McQuigg's and Salas & McQuigg's Opp'n to Pl.'s

4    Mot. Summ. J. and Counter-Mot. Summ. J., Ex. A at 2.)  At this point, the parties' versions

5    of events diverge.  Doiron asserts Giannos agreed to provide the $150,000 as part of his

6    capital contribution to Del Caribe.  (Doiron Aff. at ¶ 10.)  Giannos asserts Doiron and

7    Silingo contacted him to see if he knew of anyone interested in an investment opportunity.

8    (Mot. for Summ. J. Against Defs. Daniel Doiron and Larry Riehle, Aff. of John Giannos

9    ("Giannos Aff.") at ¶ 3-7.)  Doiron purportedly asked Giannos to find someone who would

10   make Doiron a risk free loan for fourteen to thirty days.  (Id. at ¶ 2.)  Doiron allegedly

11   represented that the funds would be placed into Doiron's attorney's trust fund account, the

12   money would be in the account only to demonstrate to Vacation Village that Doiron had the

13   funds available, and the money would not leave the attorney's trust fund account.  (Id. at

14   ¶ 6.)  According to Giannos, Doiron promised to pay $30,000 in interest to whomever made

15   the loan.  (Id. at ¶ 8.)

16        Silingo asserts she participated in this telephone call during which Doiron stated

17   he needed a risk free loan and Doiron promised he would be personally responsible for the

18   loan.  (Mot. for Summ. J. [Doc. #120], Aff. of Katherine M. Silingo at 1.)  According to

19   Silingo, she never agreed to be responsible for repayment of the loan and Doiron never

20   indicated the loan was made on her behalf.  (Id. at 2.)

21        The witnesses are at odds as to how the proposal to fund the loan was initiated

22   with Plaintiff Kenneth Harada ("Harada").  Harada and Third Party Defendant Frank

23   Toddre ("Toddre") assert Giannos relayed Doiron's offer to Harada.  (Mot. for Summ. J.

24   Against Defs. Daniel Doiron and Larry Riehle, Aff. of Frank Toddre ("Toddre Aff.") at ¶ 8;

25   Aff. of Kenneth Harada ("Harada Aff.") at ¶¶ 2-5.)  Harada expressed interest, but wanted

26   to clarify the loan's terms.  (Toddre Aff. at ¶ 8.)  Giannos and Toddre allegedly re-

confirmed the loan terms with Doiron, and then called Harada again.  (<u>Id.</u> at ¶¶ 9-10.)  In contrast, Giannos and Silingo assert Doiron conducted a telephone conference in which Harada, Giannos, Toddre, and Silingo participated.  (Giannos Aff. at ¶ 3; Silingo Aff. at ¶ 4.)  Giannos and Silingo assert that during this phone call Doiron told Harada he needed the loan, and Doiron explained the loan's terms.  (Giannos Aff. at ¶¶ 4-8; Silingo Aff. at ¶¶ 4-9.)

Harada wired $150,000 to McQuigg's trust account on January 31, 2003. (Doiron Aff. at ¶ 12; McQuigg Aff. at ¶ 4.)  Per Doiron's instructions, McQuigg informed Vacation Village the funds were deposited in the trust account so that Vacation Village would extend the time for Del Caribe's performance under the purchase-sale agreement. (McQuigg Aff. at ¶ 3.)  On February 5, 2003, Doiron instructed McQuigg to obtain a cashier's check in the amount of $150,000 payable to Vacation Village, and McQuigg did as instructed.  (Doiron Aff. at ¶ 13; McQuigg Aff. at ¶ 5; Mot. Summ. J. Against Defs. Jacqueline McQuigg and Salas & McQuigg, Exs. 4, 5.)  After Del Caribe paid the earnest money to Vacation Village, the purchase-sale agreement never was completed "due to various gaming and financing issues."  (Doiron Aff. at ¶ 14.)  When it became clear the purchase was not going to proceed, Doiron resigned his interests in Del Caribe.  (<u>Id.</u> at ¶ 16.)

According to Doiron, it was only upon the collapse of the purchase-sale agreement that Giannos told Doiron that he had borrowed the $150,000.  (<u>Id.</u> at ¶ 15.) Doiron asserts he never spoke to Harada or the other Plaintiffs who contributed towards the $150,000.  (<u>Id.</u> at ¶¶ 21-22.)  Doiron claims Silingo and Giannos told him he was personally liable for the loan from Harada, but Doiron denied any liability.  (<u>Id.</u> at ¶¶ 16-17.)

Harada and his two fellow investors, Paul Sasaki and Ken Kaminaka, brought suit in this Court based on diversity jurisdiction against Doiron, Riehle, McQuigg, and Salas & McQuigg.  (Compl. [Doc. #1].)  Plaintiffs asserted claims against Doiron for failure to

1   repay the loan (count one), and for fraudulently transferring his assets to avoid recovery by

2   Plaintiffs (count two).  (Compl. at ¶¶ 3-14.)  Defendant Doiron filed counterclaims and a

3   third party complaint, asserting Plaintiffs acted in concert with Giannos, Silingo, and

4   Toddre to create an illegal loan falsely identifying Doiron as the borrower (counterclaim

5   one, third party complaint count one) and fraud (counterclaim two, third party complaint

6   count two).  (Def. Daniel Doiron's Am. Answer and Counterclaims and Third-Party Compl.

7   [Doc. #27] at 11-22.)  Doiron also brought an indemnity/contribution claim against the

8   Third Party Defendants in the event Plaintiffs recovered against Doiron (third party

9   complaint count three).  (Id. at 22-23.)

10          The Court granted summary judgment in favor of McQuigg and Salas &

11  McQuigg.  (Order [Doc. #51].)  By stipulation, Third Party Plaintiff Doiron dismissed his

12  claims against Toddre with prejudice.  (Stip. & Order to Dismiss with Prejudice [Doc.

13  #90].)  By stipulation, the claims between Plaintiffs, Doiron, Riehle, and Giannos have been

14  dismissed.  (Order [Doc. #126].)  The only remaining claims in this action are between

15  Doiron and Silingo.

16          Silingo moves for summary judgment, arguing this Court lacks jurisdiction over

17  the Third Party Complaint now that all claims between the diverse parties have been

18  resolved and she and Doiron both are Nevada residents, thus diversity is lacking.  Silingo

19  also moves for summary judgment on the merits, arguing the Third Party Complaint does

20  not allege she acquired the loan or agreed to be personally responsible for the loan.  Silingo

21  further argues the Third Party Complaint fails to plead fraud with particularity.  Finally,

22  Silingo argues Doiron is not entitled to contribution or indemnity from her because no

23  evidence shows she procured the loan or agreed to repay the loan personally.

24          Doiron responds that because Silingo was a Del Caribe member, she is personally

25  responsible for paying her share of costs Doiron has had to pay Plaintiffs regarding the loan.

26  Doiron also argues Silingo worked with Giannos, Toddre, and Harada to hold Doiron

5

personally liable on the loan even though Giannos procured the loan without Doiron's knowledge or participation.

Doiron moves to present new evidence to the Court in the form of various documents Doiron asserts he recently discovered which demonstrate Silingo was a Del Caribe member. Silingo opposes the motion, asserting it is an untimely attempt to produce new discovery, the documents do not show Silingo agreed to be personally responsible for the loan, and if the loan was made to Del Caribe, Silingo is not personally responsible for the company's debts.

## II. DISCUSSION

### A. Jurisdiction

Silingo challenges the Court's jurisdiction following the dismissal of the claims between Doiron and Plaintiffs. Silingo contends that because federal jurisdiction in this matter was based on diversity jurisdiction, now that the claims between the diverse parties have been resolved, the Court no longer has diversity jurisdiction because Silingo and Doiron are both Nevada residents and thus are non-diverse. Doiron contends that because the case originated in federal court, it ought to remain in federal court.

Pursuant to 28 U.S.C. § 1367(a), where a district court has original jurisdiction, the court also has supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." Where the court's original jurisdiction is based on diversity jurisdiction, the court does not have supplemental jurisdiction over certain types of claims brought by plaintiffs when exercising supplemental jurisdiction over such claims would destroy diversity jurisdiction. 28 U.S.C. § 1367(b). The court may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim

1  substantially predominates over the claim or claims over which the district court has

2  original jurisdiction, (3) the district court has dismissed all claims over which it has original

3  jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for

4  declining jurisdiction." Id. § 1367(c).  Should one of these factors be present, the court

5  considers whether continuing to exercise supplemental jurisdiction promotes economy,

6  convenience, fairness, and comity.  Acri v. Varian Assocs., Inc., 114 F.3d 999, 1001 (9th

7  Cir. 1997).

8          The original Complaint in this matter asserted this Court had diversity

9  jurisdiction pursuant to 28 U.S.C. § 1332.  (Compl. at 1.)  Section 1332 grants federal

10  district courts original jurisdiction over civil actions in diversity cases "where the matter in

11  controversy exceeds the sum or value of $75,000" and where the matter is between "citizens

12  of different States."  According to the Complaint, Plaintiffs are Hawaii citizens, Defendant

13  Doiron and Riehle are Nevada citizens, and the amount in controversy exceeded $75,000, as

14  Plaintiffs sought the entire amount of the $150,000 loan.  (Id.)  Accordingly, complete

15  diversity existed between Plaintiffs and Defendants, and this Court had original jurisdiction

16  over the Complaint under § 1332.

17          Doiron's Third Party Complaint named Silingo as a Third Party Defendant and

18  identified Silingo as a Nevada resident.  (Third Party Compl. at ¶ 3.)  Because Doiron and

19  Silingo both are Nevada residents, complete diversity did not exist between them.

20  Nevertheless, this Court had jurisdiction over these supplemental claims and parties under

21  § 1367(a) even though no diversity or federal question jurisdiction independently supported

22  the supplemental claims between Doiron and Silingo.  Supplemental claims, including those

23  that involve supplemental parties, need not have an independent jurisdictional basis so long

24  as they are so related to the claims in the action within the Court's original jurisdiction that

25  they form part of the same case or controversy and they do not fall into one of the categories

26  of claims prohibited under § 1367(b) in diversity cases.  See Aetna Cas. & Sur. Co. v.

Aniero Concrete Co., Inc., 404 F.3d 566, 569 n.2 (2d Cir. 2005) (noting that "a third-party complaint does not require an independent jurisdictional basis when diversity of citizenship exists between the original parties.").

Here, the third party claims are so related to Plaintiffs' claims against Doiron that they formed part of the same case or controversy because both the original claims, Doiron's counterclaims, and Doiron's supplemental third party claims involve the circumstances surrounding the $150,000 loan to Plaintiffs and whether Doiron agreed to be personally liable on the loan.  Indeed, Doiron's counterclaims against Plaintiffs involve the same allegations as his third party claims against Silingo.  (Third Party Compl. at 14-16, 20-22.) Further, Doiron's third party claims do not fall into a § 1367(b) category because Defendant Doiron asserted the third party supplemental claims, not a plaintiff.  Accordingly, the Court had original jurisdiction over the claims between Plaintiffs and Doiron, as well as supplemental jurisdiction over the third party claims and parties.

Upon dismissal of the claims supporting original jurisdiction, this Court did not lose jurisdiction over the third party claims.  Rather, as § 1367(c) provides, the Court has discretion to dismiss those claims or retain jurisdiction over them.  Because the Court dismissed all claims over which it had original jurisdiction, § 1367(c) is triggered. Considering the relevant factors, the Court concludes dismissal is inappropriate.  This Court has exercised jurisdiction over this matter for nearly two years and is familiar with the proceedings herein.  Discovery is completed and the parties are before the Court on summary judgment.  Dismissal at this late stage of the proceedings would not serve economy, convenience, or fairness.  No overriding comity concerns are present.  The Court therefore will exercise supplemental jurisdiction over the remaining claims.

///

///

///

8

**B.  Emergency Motion to Present New Evidence**

Doiron moves to present new evidence to the Court.  Silingo opposes the motion as untimely discovery and because the documents are irrelevant to the remaining issues in the case.

The Court will deny the motion to present new evidence.  Discovery closed in this matter on March 2, 2006.  (Mot. To Extend Disc. [Doc. #82], Order [Doc. #87].)  Doiron explains he did not discover the documents until recently when an individual named Joe Holanik ("Holanik") returned the documents to Doiron.  Doiron does not detail what efforts he undertook to find the documents in a diligent manner, who Holanik is, and whether Doiron should have known at an earlier date Holanik may have documents relevant to Doiron's case.

Even if the Court overlooked the untimeliness of the proposed submissions, the documents are cumulative to evidence already on file.  Although Doiron states they will show Silingo was a Del Caribe member, Silingo admits as much in her own affidavit.  (Mot. for Summ. J., Aff. of Katherine M. Silingo at 1 ("Myself, Daniel Doiron, and Larry Riehle, were members of Del Caribe, LLC.").)  None of the documents Doiron seeks to provide show Silingo agreed to be personally liable on the $150,000 loan to Plaintiffs or that she worked with Plaintiffs, Toddre, and Giannos to assert Doiron alone was personally responsible for the loan.  Accordingly, the Court will deny the motion to present new evidence.

**C.  Summary Judgment**

Silingo moves for summary judgment, arguing the Third Party Complaint does not allege she procured the loan or agreed to be personally responsible for the loan.  Rather, Silingo notes, the Third Party Complaint alleges Giannos procured the loan and that Doiron and Silingo did not discover it was a loan rather than a capital contribution until after Giannos obtained the loan.  Second, Silingo argues the Third Party Complaint does not

9

plead fraud with particularity.  Finally, Silingo argues Doiron is not entitled to contribution or indemnity because she never agreed to be personally liable on the loan, she did not procure the loan, and if Doiron is attempting to hold her liable as a Del Caribe member, she is not personally liable for the company's debts.  Doiron responds that Silingo was a Del Caribe member and she therefore is liable for her share of Doiron's liability to Plaintiffs. Doiron also argues Silingo worked with Toddre, Giannos, and Harada to blame Doiron for procuring the loan and agreeing to be personally responsible for the loan.

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any" demonstrate "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The substantive law defines which facts are material.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  All justifiable inferences must be viewed in the light most favorable to the non-moving party. County of Tuolumne v. Sonora Cmty. Hosp., 236 F.3d 1148, 1154 (9th Cir. 2001).

The party moving for summary judgment bears the initial burden of showing the absence of a genuine issue of material fact.  Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000).  The burden then shifts to the non-moving party to go beyond the pleadings and set forth specific facts demonstrating there is a genuine issue for trial. Id.; Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 997 (9th Cir. 2001).

### 1.  Count one

The Third Party Complaint alleges Doiron met with Silingo and Giannos about entering into an investment opportunity to purchase Vacation Village.  (Third Party Compl. [Doc. #29] at ¶ 6.)  Doiron, Silingo, and Giannos thereafter formed Del Caribe.  (Id. at ¶ 7.) As Del Caribe members, the three began negotiations with Vacation Village representatives.  (Id. at ¶ 8.)  As part of the negotiations, Vacation Village demanded a $150,000 earnest money deposit.  (Id. at ¶ 10.)  The Third Party Complaint alleges Giannos

agreed to provide the earnest money deposit as part of his capital contribution.  (Id. at ¶ 13.)
According to the Third Party Complaint, it was only after the Vacation Village deal fell
through that Giannos "informed the other members of Del Caribe, L.L.C., that he had in
fact borrowed the amount he provided for his capital contribution, which was used in turn
as the earnest money deposit."  (Id. at ¶ 18.)

Count one of the Third Party Complaint alleges Giannos, Silingo, and Toddre
acted in concert with Plaintiffs to create an illegal loan with the purpose of falsely creating
in Doiron a personal obligation to pay the loan.  (Id. at ¶¶ 20-21.)  Silingo contends the
allegations above, however, allege that Giannos alone procured the loan and that she did not
learn that the earnest money deposit was a loan rather than a capital contribution until after
the Vacation Village deal fell through.  Doiron does not specifically respond to this
argument except to contend Silingo worked with Plaintiffs and the other Third Party
Defendants to fabricate Doiron's personal liability on the loan.  Doiron presents no
evidence in support of his allegations regarding this alleged cooperation, however.  In
response to a summary judgment motion, Doiron cannot rest on his pleadings but must
bring forth evidence raising a genuine issue of material fact for trial.

Even if the Court considered Doiron's newly presented evidence, Doiron has
presented no evidence to establish Silingo knew Giannos was procuring a loan or that she
agreed with Plaintiffs and the other Third Party Defendants to falsely create a personal
obligation on Doiron's behalf with respect to the loan to Plaintiffs.  All the presented
evidence shows is that Silingo was a Del Caribe member, a fact she admits.  Silingo's status
as a Del Caribe member does not raise a genuine issue of material fact that she cooperated
with Plaintiffs, Giannos, and Toddre to impose upon Doiron personal liability for the loan.
The Court therefore will grant Silingo's motion for summary judgment as to count one of
the Third Party Complaint.

///

## 2.  Count two

Count two of the Third Party Complaint alleges Giannos and Toddre independently and without Doiron's knowledge negotiated the loan with Plaintiffs.  (Third Party Compl. At ¶ 26.)  According to the Third Party Complaint, Giannos and Toddre falsely told Plaintiffs they represented Doiron and Doiron personally would repay the loan.  (Id. at ¶¶ 28-29.)  Doiron further alleges that "[b]y knowingly and willingly procuring a false loan and inappropriately providing those falsely procured funds as a capital contribution, the Third Party Defendant, John Giannos, has committed an act of fraud."  (Id. at ¶ 32.)

Silingo moves to dismiss count two, arguing it does not plead fraud as to her with particularity.  Doiron does not respond to this argument.

Federal Rule of Civil Procedure 9(b) requires a Plaintiff alleging fraud to state with particularity in the complaint the circumstances constituting fraud.  Fed. R. Civ. P. 9(b).  To satisfy this burden, the complaint "'must set forth more than the neutral facts necessary to identify the transaction.'"  Yourish v. Cal. Amplifier, 191 F.3d 983, 993 (9th Cir. 1999) (footnote omitted) (quoting In re GlenFed Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994) (en banc)).  The Ninth Circuit has defined "neutral facts" to mean the "'time, place, and content of an alleged misrepresentation.'"  Id. at 993 n.10 (quoting GlenFed, 42 F.3d at 1547-48).  In addition to the neutral facts, a plaintiff also must explain what is false about a statement and why it is false.  Id. at 993.  "[M]ere conclusory allegations of fraud are insufficient."  Moore v. Kayport Package Exp., Inc., 885 F.2d 531, 540 (9th Cir. 1989).  However, courts must not "make Rule 9(b) carry more weight than it was meant to bear."  GlenFed, 42 F.3d at 1554.  So long as the complaint sufficiently describes the circumstances of the alleged fraud so that the defendant adequately is able to respond, the complaint meets the particularity requirement of Rule 9(b).  Cooper v. Pickett, 137 F.3d 616, 627 (9th Cir. 1997).

The Third Party Complaint does not contain any allegations regarding Silingo with respect to count two.  The only identified Third Party Defendants in count two are Toddre and Giannos.  The Third Party Complaint does not identify Silingo by name with respect to count two and does not allege any fraudulent acts on her part.  Consequently, the Third Party Complaint fails to state a fraud claim against Silingo.  Even if the Third Party Complaint could be read to allege fraud against Silingo, it does not allege fraud with particularity.  The Court therefore will grant Silingo's motion as to count two.

<u>3.  Count three</u>

Count three alleges Doiron is entitled to contribution and/or indemnity from the Third Party Defendants, including Silingo.  Silingo moves for summary judgment on this claim, arguing she is not liable for contribution or indemnity because she did not procure the loan, she did not agree to be personally liable on the loan, and she is not personally liable for Del Caribe's debts.  Doiron does not specifically respond to this argument other than to state that because Silingo was a Del Caribe member she must assist Doiron in paying Plaintiffs.

Pursuant to Nevada Revised Statute § 86.371, unless the articles of organization or a signed agreement provide otherwise, a member or manager of a limited-liability company formed under Nevada law is not individually liable for the company's debts or liabilities.  Doiron has presented no evidence Del Caribe's articles of organization provide that members are personally liable for the company's debts.  Doiron also has presented no evidence Silingo personally guaranteed the loan or otherwise agreed to be personally responsible for the loan to Plaintiffs or for Del Caribe's debts.  The Court therefore will grant Silingo's motion as to count three.

///

///

///

13

**III.  CONCLUSION**

IT IS THEREFORE ORDERED that Third Party Defendant Katherine Silingo's Motion for Summary Judgment (Doc. #120) is hereby GRANTED.  Judgment is hereby entered in favor of Third Party Defendant Katherine Silingo and against Third Party Plaintiff Daniel Doiron.

DATED:    March 30, 2007.

_____
PHILIP M. PRO
United States District Judge